# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | No. 24-cr-349-1 (RC) |
| | : | |
| JAVON ROACH, | : | |
| also known as "Roach," | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the Interim United States Attorney for the District of Columbia, respectfully submits its Memorandum in Aid of Sentencing as to Defendant Javon Roach (hereafter, the "Defendant" or "Defendant Roach").

On March 6, 2025, the Defendant pleaded guilty, pursuant to a Rule 11(c)(1)(C) plea agreement, to Counts One through Five of the Indictment, charging him with Carjacking and Aiding and Abetting, in violation of 18 U.S.C. § 2119(1) and 2 (Counts One, Three, and Five), and Brandishing a Firearm in Furtherance of a Crime of Violence and Aiding and Abetting, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) and 2 (Counts Two and Four). Sentencing is currently scheduled for June 27, 2025.

Pursuant to the Plea Agreement, ECF No. 32, the parties have agreed that a sentence between 168 and 246 months, to be followed by five years of supervised release, is the appropriate sentence for the offense to which the Defendant pleaded guilty. *See* ECF No. 49, Presentence Investigation Report ("PSR") ¶ 132. Accordingly, for the reasons herein, and based on the 18 U.S.C. § 3553(a) factors, the United States requests that the Court sentence the Defendant to a 246-month term of incarceration to be followed by five years of supervised release.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

As detailed below, in March 2023, Defendant Roach and his co-defendants engaged in a rampant, unrelenting spree in which they committed multiple armed carjackings and robberies across Washington, DC, which ultimately culminated in his arrest in Fairfax County on March 30, 2023. In addition to the three incidents he has pleaded guilty to, Defendant Roach has admitted to perpetrating nine additional carjackings and robberies. In total, the Defendant victimized at least 17 people in 12 separate offenses between February and March 2023, by pointing handguns at them, threatening their lives, and stealing their property.  *See* ECF No. 33, Statement of Offense ("SOF").

This spree only ceased when the Defendant was brought into custody in Fairfax County, Virginia, on March 30, 2023, after fleeing police in a carjacked vehicle, ramming into civilian and law enforcement vehicles, and continuing to flee on foot until forcibly detained, all the while with a firearm with a machinegun conversion device (MCD, or "switch") in his pant leg.

On August 1, 2024, Defendant Roach was charged by indictment with three counts of Federal Carjacking, in violation of 18 U.S.C. § 2119(1), based on his perpetration of three carjackings on March 6, March 17, and March 26, 2023, respectively, and the associated counts of 18 U.S.C. § 924(c)(1)(A)(ii) for brandishing a firearm during these carjackings. He was released on August 5, 2024, from Virginia State custody, where he was incarcerated for his conduct on March 30, 2023, and arrested in the instant matter. The Defendant has been in federal custody since.

The offenses the Defendant admitted to perpetrating as part of his guilty plea are described chronologically below, along with the facts relating to his arrest in Fairfax County on March 30, 2023.

     i.       *February 7, 2023 Carjacking at 350 G Street SW*

On February 7, 2023, at approximately 9:00 pm, the Defendant carjacked a male victim ("V-1"), who was putting air in his vehicle tires, in a parking lot located at 350 G Street SW in Washington, DC. One assailant hit V-1 seven to eight times in his head, pulled V-1 away from his vehicle, and got into the driver's side of the vehicle, where he was joined by two others. After V-1's vehicle was recovered by law enforcement, the Defendant's DNA was identified on swabs of interior front driver door handles, controls on door, steering, and gear shift, as well as swabs of the interior rear driver door handles and controls on door.

     ii.     *March 6, 2023 Carjacking at 1501 Maryland Avenue NE (Counts One and Two)*

On March 6, 2023, at approximately 9:20 pm, Defendant Roach, along with Defendant Rushing, perpetrated an armed carjacking against a male victim ("V-2") as he approached a Pizza Hut located at 1501 Maryland Avenue. Defendant Rushing pointed a handgun at V-2 and demanded V-2's keys and phone as Defendant Roach stood to the side pointing a loaded long-style gun at V-2. Defendants Roach and Rushing subsequently fled in V-2's vehicle, which was later recovered unoccupied in a rear parking lot of 434 37th Place SE on March 13, 2023, and a third suspect fled in the vehicle the defendants had arrived in.

Five hours prior to the carjacking, at approximately 4:30 pm, Defendant Rushing posted an Instagram story to his account showing a group of individuals (including Defendants Roach and Rushing) who appear to be holding firearms. As depicted in Figures A and B below, Defendant Roach appears to be holding a long-style gun consistent with the firearm depicted in the surveillance video of the carjacking (and described by V-2), and Defendant Rushing is holding a handgun with an extended magazine.




*Figure A: Still shots of suspects taken from surveillance of March 6, 2023 carjacking*





*Figure B: Defendant Roach (L) and Defendant Rushing (R)*

###### iii.    *March 11, 2023 Carjackings*

On March 11, 2023, at approximately 1:20 am, the Defendant perpetrated an armed carjacking at 814 Bladensburg Road NE in Washington, DC. Specifically, the Defendant and another individual approached a male victim ("V-3") who was using the gas pump at a gas station. One of the two individuals pointed a handgun at V-3 and then hit him in the face with the handgun. The other individual took V-3's car keys from V-3's pocket and fled in V-3's vehicle while the armed individual fled in a separate car.

Only around 30 minutes later, at approximately 1:49 am, the Defendant perpetrated another armed carjacking at 823 Pennsylvania Avenue SE in Washington, DC, where he approached a male victim ("V-4"), pointed a gun at him, and demanded his keys. When V-4 stated that his keys were in his car, the Defendant took V-4's iPhone and wallet from his pocket, got into the driver's seat of V-4's vehicle , a gray BMW 535i sedan, and fled, while at least one other perpetrator fled in the black Honda Civic the group arrived in.[1] Even more troubling, just over an hour later, Defendant Roach posted an Instagram Story depicting an individual with a BMW key attached to his belt loop, with an overlay of a song entitled "Jacking." Shortly thereafter, he took photographs of himself on his phone holding apparent firearms and wearing clothing consistent with that seen on surveillance, as depicted in Figure C below.

---

[1] Notably, the suspect vehicle used in this incident was a carjacked black Honda Civic that was stolen at gunpoint the night before on March 10, 2023.

 

*Figure C: Instagram Story from Defendant Roach's account posted on March 11, 2023, at 3:14 am (L); photograph of Defendant Roach taken on March 11, 2023, at 3:35 am (R)*

            *iv.*      *March 16, 2023 Robbery at 3911 Benning Road NE*

On March 16, 2023, at approximately 3:05 pm, the Defendant perpetrated an armed robbery at 3911 Benning Road NE in Washington, DC. Specifically, Defendant Roach and Defendant Rushing approached a male victim ("V-5"), who was returning to his vehicle with food he was delivering on behalf of his employer, and threatened V-5 with a gun, demanding his property. They took V-5's phones, $200 in U.S. currency, and the food V-5 was delivering. The Defendants then fled in a black Toyota RAV-4 that had been carjacked the day prior.

v.      *March 17, 2023 Robbery and Assault*

The following day, on March 17, 2023, at approximately 9:34 am, Defendants Roach and Rushing perpetrated another armed robbery at 303 Anacostia Road SE in Washington, DC. Specifically, Defendant Roach and Defendant Rushing followed a male victim ("V-6"), who was doing repairs inside the apartment, into the unit. Defendant Roach then pointed a handgun with a laser beam at V-6 and demanded his property. When V-6 did not comply, Defendant Roach then pistol whipped him with the handgun, causing V-6 to briefly lose consciousness. Defendant Roach then took V-6's cellphone and housekeys. Defendant Roach then approached the two other male victims who were working in the apartment ("V-7" and "V-8"); V-7 gave his keys and phone to Defendant Roach, but Defendant Roach rejected V-7's phone after leaving his latent fingerprint on the face of the phone. When V-8 did not have any property, Defendant Roach hit V-8 in the head with the handgun and Defendant Rushing kicked V-8 in the head and shoulder area. Defendants Roach and Rushing then fled with the victims' property.

vi.     *March 17, 2023 Carjacking at 3821 Minnesota Avenue NE (Bank of America) (Counts Three and Four)*

Later that same day, at approximately 11:35 pm, the Defendant perpetrated an armed carjacking at 3821 Minnesota Avenue NE in Washington, DC, where a male ("V-9") was standing at an ATM. V-9's vehicle was idling nearby with a passenger ("V-10") seated inside the passenger seat. Defendants Roach and Armstrong approached V-9, where Defendant Roach brandished a loaded firearm at V-9 and demanded his property, including his wallet. As Defendant Roach took V-9's property, Defendant Armstrong and another individual approached V-9's vehicle, where they directed V-10 to exit the vehicle, which the assailants ultimately used to flee.

When V-9's vehicle was later recovered, on March 24, 2023, a .40 caliber spent shell casing was found near the windshield, which was linked through National Integrated Ballistic Information Network ("NIBIN") to a March 20, 2023 shooting at 320 34th Street SE. From the shooting scene, law enforcement recovered nine shell casings, 9mm and .40 caliber, including casings also linked through NIBIN to the 9mm firearm with a Glock switch recovered from Defendant Roach's person on March 30, 2023, upon his arrest in Fairfax County. In sum, both the spent casing recovered from the Honda Civic carjacked on March 17, 2023, and the firearm recovered from Defendant Roach on March 30, 2023, appear to be connected to the shooting on March 20, 2023. Moreover, Defendant Roach's phone contains a series of photos taken on March 20, 2023, at approximately 6:00 pm (approximately an hour and 45 minutes before the shooting), of him with two handguns, one with a drum-style magazine attached to it, as seen in Figure D below.



*Figure D: March 20, 2023 photographs taken from Defendant Roach's phone*

vii.    *March 25, 2023 Armed Robbery and Carjacking*

Approximately one week later, on March 25, 2023, at approximately 11:25 am, the Defendant perpetrated an armed robbery at 3820 Minnesota Avenue NE in Washington, DC, where a male victim ("V-11") was exiting a gas station. The Defendant pointed a black handgun at V-11 and demanded his money, while another individual took $114 in U.S. currency from V-11's pockets. Both individuals then fled in a silver Hyundai previously stolen from Montgomery County on March 21, 2023.   Immediately after this robbery, at approximately 11:30 am, the Defendant perpetrated an armed carjacking at 3905 Benning Road NE in Washington, DC. Specifically, a male victim ("V-12") was approached by the Defendant and another individual when the Defendant displayed a handgun and stated, "you know what this is man, give me all you got." The other individual then searched V-12's pockets and took his wallet and keys, and fled in V-12's vehicle, a black Toyota Camry, while the Defendant fled in the same silver Hyundai in which they arrived.

viii.    *March 26, 2023 Carjacking at 3820 Minnesota Avenue NE (Citgo Gas Station) (Counts Five and Six)*

The following day, on March 26, 2023, at approximately 7:48 pm, Defendants Roach and Rushing perpetrated an armed carjacking at 3820 Minnesota Avenue NE in Washington, DC, where, armed with firearms, they approached a male victim ("V-13"). Defendant Roach pointed a gun at V-13 and Defendant Rushing took approximately $100 in U.S. currency and V-13's wallet from him. Defendants Roach and Rushing then fled in V-13's vehicle, a maroon Chevrolet Impala.

ix.    *March 28, 2023 Armed Robberies of Construction Workers*

Two days later, on March 28, 2023, at approximately 10:49 am, the Defendant perpetrated an armed robbery at the intersection of 49th Street and Central Avenue NE in Washington, DC, where he approached a male victim ("V-14") who was working at a construction site. Defendant

Roach pointed a black firearm at him, pushed it into his stomach, and stated, "give me the money motherfucker" before taking approximately $1,000 in U.S. currency from V-14's wallet and fleeing in V-13's carjacked Chevrolet Impala.

Approximately two hours later, at around 12:50 pm, Defendants Roach and Armstrong perpetrated an armed robbery on the 300 block of K Street SW in Washington, DC. Specifically, Defendants Roach and Armstrong approached three construction workers ("V-15, V-16, V-17") who were unloading equipment from their vehicle. Defendants Roach and Armstrong both pointed firearms at the workers before searching through their pockets and demanding their property. After taking two wallets and a cell phone from the workers, the Defendant and the other individual fled in V-13's carjacked Chevrolet Impala. About an hour and a half later, Defendants Roach and Armstrong went live on Instagram holding significant amounts of U.S. currency, as depicted below.



*Figure E: still shot of Defendant Roach's Instagram Live video taken on March 28, 2023*

x.    *March 29, 2023 Audi Carjacking & March 30, 2023 Attempt to Flee and Arrest*

The following day, on March 29, 2023, in a series of events that would ultimately culminate in the arrest of Defendants Roach, Rushing and Armstrong in Fairfax County, Virginia, another individual ("M.B.") reported that he had been the victim of an armed carjacking in Capitol Heights, Maryland in which his vehicle, a 2014 gray Audi Q5, had been taken at gunpoint.

The following day, on March 30, 2023, at approximately 2:15 pm, Fairfax County Police Department located M.B.'s carjacked Audi in a parking garage of Tyson's Mall and set up surveillance of the vehicle. Surveillance video showed three individuals previously exiting the vehicle and entering the mall. At approximately 3:15 pm, law enforcement observed the three individuals returning to the parked Audi and attempted to stop them. Although Defendant Armstrong was apprehended inside of the parking garage, Defendants Roach and Rushing fled out of the parking garage in the carjacked Audi onto the 8000 block of Leesburg Pike. After the carjacked Audi became stuck in traffic, Defendant Roach, who was driving, attempted to escape apprehension by forcing the vehicle through several civilians' vehicles that were also stopped in traffic, causing damage to numerous vehicles. Defendant Roach also attempted to reverse the carjacked Audi and struck a Fairfax County police vehicle before law enforcement officers were ultimately able to surround and stop the vehicle.

Defendant Roach then exited the carjacked Audi and fled on foot. After a foot pursuit, he was apprehended by law enforcement in a nearby parking lot. During a search incident to Defendant Roach's arrest, law enforcement recovered a loaded handgun with an extended magazine from his pant leg. The firearm was equipped with a machinegun conversion device, sometimes referred to as a Glock switch, capable of making a semi-automatic handgun operate as a fully automatic handgun. Located inside of the glove box of the carjacked Audi was another

11

loaded handgun.

Defendant Roach subsequently pleaded guilty in Fairfax County, Virginia, to machinegun possession and assault on a police officer on July 11, 2023. On September 8, 2023, he was sentenced to one-year of incarceration as part of a seven-year suspended sentence and he remained incarcerated in Virginia until he was released on August 5, 2024, and arrested by the FBI in relation to the instant matter.

## II.    LEGAL STANDARD

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). *See United States v. Gall*, 128 S. Ct. 586, 596 (2007). These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

The listed factors in 18 U.S.C. § 3553(a) include the following:

1) The nature and circumstances of the offense and the history and characteristics of the defendant;

2) The need for the sentence imposed –
   a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   b) To afford adequate deterrence to criminal conduct;
   c) To protect the public from further crimes of the defendant; and
   d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for –
    a) The applicable category of offense committed by the applicable category of defendant as set forth in the guidelines –
        i) Issued by the Sentencing Commission . . . ; and
        ii) That . . . are in effect on the date the defendant is sentenced

5) Any pertinent policy statement –
    a) Issued by the Sentencing Commission . . . and
    b) That . . . is in effect on the date the defendant is sentenced

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

Procedurally, after calculating the applicable Guidelines range, the Court should next consider all the applicable factors set forth in 18 U.S.C. § 3553(a). Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). *Rita v. United States*, 551 U.S. 338, 347 (2007).

### III. GUIDELINES CALCULATION

#### A. Total Offense Level

With respect to Counts One, Three, and Five of the Indictment, the base offense level for a violation of 18 U.S.C. § 2119(1) is governed by U.S.S.G. § 2B1.3. Because they involve separate victims/harms, the counts do not group. *See* U.S.S.G. § 3D1.2; PSR ¶ 44. Pursuant to U.S.S.G. § 3D1.4 and as detailed in the PSR and the Plea Agreement, the combined adjusted offense level is 30. PSR ¶ 69. After adjustments for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b), the final offense level for Counts One, Three, and Five is 27. PSR ¶ 74.

As to Counts Two and Four, the applicable guideline sentence for a violation of 18 U.S.C. § 924(c)(1)(A)(ii) is governed by U.S.S.G. § 2K2.4(b). PSR ¶ 45.

### B.  Criminal History Category

The U.S. Probation Office calculates the Defendant to have nine criminal history points, which places him in Criminal History Category IV.  *See* PSR ¶ 82.

### C.  Sentencing Guidelines Range

For Counts One, Three, and Five, a final offense level of 27 and Criminal History Category IV results in a guidelines range of 100−125 months of incarceration, 1 to 3 years of supervised release, and a fine range of $25,000 to $250,000.  *See* U.S.S.G. §§ 5D1.2(a)(2) and 5E1.2(c)(3); PSR¶ 128, 137.  Pursuant to U.S.S.G. § 2K2.4, the guidelines range for Counts Two and Four is the minimum term of imprisonment set by statute, here, 84 months of incarceration, which shall be imposed consecutively to the sentence imposed on Counts 1, 3 and 5, and each other, and 2 to 5 years of supervised release. PSR¶ 130, 138. As a result, the Defendant's aggregate guidelines sentencing range for Counts One to Five is 268–293 months of incarceration. *See* ECF No. 50 ("Sentencing Recommendation").

## IV.    DISCUSSION AND SENTENCING RECOMMENDATION

The United States recommends that the Court sentence the Defendant to a term of 246 months' (20.5 years) incarceration to be followed by five years of supervised release. Under the totality of circumstances, including the nature and seriousness of the Defendant's conduct and his history and characteristics, the United States submits that such a sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### A.  <u>Nature And Circumstances of The Offense</u>

As described in detail in the Factual Background, the nature and circumstances of the Defendant's numerous offenses warrants a significant sentence. First and foremost, these are violent crimes that have left the Defendant's at least 17 victims with trauma that will likely follow

them for the rest of their lives. Many victims reported that they continue to feel unsafe in their communities more than two years after they were victimized. Notably, six of these victims were older individuals and particularly vulnerable, something it appeared the Defendant chose to take advantage of, given that surveillance video showed the Defendant looking around for particular victims to target. Seven additional victims were at work, trying to do their jobs at construction sites, when the Defendant targeted them, assaulted them with firearms, and stole their property. These were victims that worked hard to provide for themselves, and the Defendant put them in fear for their lives to benefit himself.

Notably, the Defendant was the common factor between each and every incident investigated as part of this spree. While his co-defendants would sometimes participate, the Defendant was not only always present, but *always holding a loaded firearm pointed at the victim*. Surveillance video depicts the Defendant as the one who put his hands on the victims and restrained them, often pushing the firearm he was holding into their body while threatening their lives. In the more violent incidents involving victims who were assaulted or pistol-whipped, the Defendant was the one who committed the violence. Although one would hope that inflicting pain and observing the terror of a victim at such close range would deter a person from further similar acts, the Defendant was far from deterred. In fact, on more than one occasion, the Defendant went on to commit another, nearly identical violent crime to yet another victim within minutes or hours. And then often went on to post the fruits of his violent acts on social media, appearing disturbingly unaffected.

The Defendant did this for *weeks*, notably using at least three distinct firearms in furtherance of these offenses. All of the firearms recovered to date in relation to this investigation, including a firearm recovered from Defendant Rushing on March 7, 2023, and the two firearms

recovered in Fairfax County on March 30, 2023, were loaded. Indeed, the gun Defendant Roach possessed on March 30, 2023, also had a "switch" on it, rendering the firearm fully automatic and highly dangerous. The Defendant's messages and communications with his co-defendants, as further explained below, as well as his allocution in his guilty plea to using loaded firearm, demonstrate his deadly intent in each and every incident he undertook during this spree.

Each incident on its own has a devastating impact on a victim and demonstrates the Defendant's extreme disregard for human life. In aggregating this impact *at least 12 times over 17 victims*, particularly in such a short period of time, the damage the Defendant has caused is unconscionable. Accordingly, a sentence of 246 months' incarceration is appropriate, in light of the devastating consequences of these offenses to the victims, and to the District and surrounding areas.

### B. <u>History and Characteristics</u>

The Defendant's extensive and violent criminal history involving seven convictions or adjudications, PSR ¶ 75−81, and his history of additional uncharged gun possession and gun violence all support a significant sentence of incarceration.

#### a. *Criminal History*

In addition to the conduct articulated in the PSR ¶ 75−80, the Defendant's conviction for his conduct on March 30, 2023, is significant and speaks to a flagrant disregard for the law and the safety of the community. As described above, when confronted with armed police at the Tyson's Mall, surrounding the vehicle and boxing him in with multiple police cars, rather than comply with their commands and allow himself to be arrested, the Defendant maneuvered the vehicle to ram through multiple police cars and fled the garage. He led police on a dangerous high-speed chase, which only ceased when he crashed into multiple vehicles and the Audi he was driving was stuck

between cars.

Then, again, rather than surrender, he fled on foot, jumping over a fence and running through a parking lot until he was finally subdued by law enforcement. During this time, he was armed with a loaded firearm that was modified to operate as a machinegun. The Defendant's actions that led to his arrest risked the lives of numerous law enforcement officers and civilians in his attempt to evade accountability for his conduct.

b. *History of Gun Violence & Gun Possession*

In addition to his lengthy criminal history, it appears that what the Defendant has been held accountable for is the tip of the iceberg of his use of firearms in other criminal activity. Defendant Roach's own statements suggest that his motive in committing the carjackings he is being sentenced for was to procure vehicles to commit additional acts of gun violence in. When the Defendant received an Instagram message on March 26, 2023, asking "🚗 ?," he responded, "Da joints I got I use them spin In." The term "spinning" in the DC area commonly refers to targeting certain groups of people for shootings. In light of this and the apparent usage of the vehicle carjacked on March 17, 2023, in the March 20, 2023 shooting referenced above, one can infer that one of the Defendant's purposes for carjacking vehicles was indeed to use the vehicles in additional criminal activity. This is further evidenced by the use of the carjacked Chevrolet Impala from the March 26, 2023 carjacking in two separate robberies on March 28, 2023.

Messages between Defendant Roach and Defendant Armstrong further bear out Defendant Roach's role in procuring firearms, ammunition, and other accessories for his co-defendant. In one message from March 25, 2023, Defendant Armstrong asks Defendant Roach to find him a "22 clip."

17



In other messages, Defendant Armstrong discusses procuring bullets, sometimes referred to as "eggs," with Defendant Roach.

The following day, on March 26, 2023, Defendant Armstrong messaged Defendant Roach early in the morning, at 12:20 am, stating: "I jus got a car to" "me n Dre," and followed up one minute later stating "tryna get somebody at the bank." At around 2:00 am, Defendant Armstrong messaged another Instagram user that he is waiting for "roach" and "Dre" to "go get some money" "den up the street" to "spin again," again implying an intention to commit shootings together. At 3:23 am, Defendant Armstrong explained to the same person that "we just went up there" and "hit at" "3 n[****]s." When the other person asks, "did they fall," Defendant Armstrong responded, "yeah got back up quick es." When asked who he was with, Defendant Armstrong responded, "always gon 3," to which the other person responds, "You roach Dre," to which Defendant Armstrong then responds "yeah." Defendant Armstrong follows up with a second message stating "Bouta go get me some more eggs."

One hour later, at 4:25 am, Defendant Roach went live on Instagram with Defendant Armstrong where Defendant Roach can be observed holding a firearm and counting bullets.



*Figure F: screenshots of Defendant Roach's Instagram live video*

The Defendant has shown that he will not be deterred in his pattern of violent, criminal conduct and has demonstrated an alarming lack of recognition or remorse for his actions. *See* PSR ¶ 108. Consequently, Defendant Roach's history and characteristics, which evince a sustained history of violence that escalated in a short period of time before culminating in his conviction and incarceration for his conduct on March 30, 2023, weigh heavily in favor of a significant sentence.

## C.  The Need for the Sentence to be Imposed

The sentence should reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public from further crimes of the defendant.  *See* 18 U.S.C. § 3553(a)(2).  The United States respectfully

submits there is a significant need to deter the persistent and violent conduct in this case, both for this Defendant and for others.  Additionally, a significant sentence of incarceration would protect the public from further crimes of the Defendant. Under the totality of the circumstances, a 246-month sentence of incarceration serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

### D.  **Other Factors**

Such a sentence would also give the Defendant significant time to pursue further educational and vocational training and participate in other programs, such as grief counseling, that will hopefully assist him in not recidivating upon release.  The recommended sentence also appropriately reflects that the Defendant's encounters with the criminal justice system have, to date, not adequately deterred him from engaging in the conduct to which he ultimately pleaded guilty in the present case.

## V.    <u>**CONCLUSION**</u>

For the foregoing reasons, the United States recommends that the Defendant, Javon Roach, be sentenced to 246 months' incarceration to be followed by a term of five years' supervised release.

Respectfully Submitted,

JEANINE FERRIS PIRRO
INTERIM UNITED STATES ATTORNEY

By:    <u>/s/ *Gaelin Bernstein*</u>
GAELIN BERNSTEIN
N.Y. Bar No. 6081079
Trial Attorney
ANDREA DUVALL
A.R. Bar Number 2013114
Assistant United States Attorney
United States Attorney's Office
601 D Street, NW
Washington, DC 20530
Phone: (202) 252-6743
Email: Gaelin.Bernstein2@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2025, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

<div style="margin-left: 50%;">

/s/ *Gaelin Bernstein*
GAELIN BERNSTEIN
Trial Attorney

</div>